IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

---

ALEXIS MINTZ, *individually, and on behalf of all others similarly situated,*

    Plaintiff,

v.

SUMMIT EDUCATION ASSOCIATION, INC. d/b/a SUMMIT CREDIT UNION,

    Defendant.

---

Civil Action No.: 1:23-cv-1070

**JURY TRIAL DEMANDED**

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff, Alexis Mintz ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, Brown, LLC and CR Legal Team, LLP, hereby files this Collective and Class Action Complaint against Summit Education Association, Inc. d/b/a Summit Credit Union ("Defendant"), and alleges of her own knowledge and conduct and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1. Plaintiff brings this action, individually and as a collective action on behalf of all other call center agents who elect to opt-in to this action to recover unpaid overtime wages, liquidated damages, and reasonable attorneys' fees and costs as a result of Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and attendant regulations at 29 C.F.R. § 516, *et seq*.

2. Additionally, Plaintiff brings this action under Federal Rule of Civil Procedure 23, on behalf of herself, individually, and all similarly situated employees of Defendant who work or worked in North Carolina, to recover unpaid wages, overtime wages, plus interest, liquidated

damages and related penalties, and reasonable attorneys' fees and costs under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*.

3. Defendant provides telecommunication support services to its customers.

4. Plaintiff and the members of the putative class/collective were employed by Defendant as call center agents and were responsible for handling inbound telephone calls from Defendant's customers.

5. The U.S. Department of Labor recognizes that customer support jobs, like those held by Defendant's call center agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert customer support employees to some of the abuses which are prevalent in the industry.

6. One of those abuses, which are at issue in this case, is the employer's refusal to pay call center agents for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday. *Id*.

7. More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

8. Defendant failed to pay call center agents for their pre-shift time spent starting up their computers, opening, logging into and connecting to required systems and applications, and reviewing work-related e-mails and other information, including time worked in excess of forty (40) hours in a workweek.

9. Additionally, Defendant failed to pay call center agents for their post-shift time spent dropping off mail, dropping of deposits, and awaiting escort out of Defendant's facility.

10. Plaintiff seeks unpaid overtime wages and liquidated damages pursuant to the FLSA on behalf of herself and the FLSA Collective, defined as "*all current and former hourly-paid, non-exempt employees, employed in the position of call center agent who worked for Defendant in any place covered by the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., including, but not limited to, the United States, Puerto Rico, the Virgin Islands, American Samoa, and Guam, at any time within the three (3) years preceding the commencement of this action and the date of judgment ("FLSA Collective")*. *See* 29 U.S.C. §§ 207(a)(1); 216(b).

11. Plaintiff seeks unpaid wages, overtime wages, and liquidated damages and related penalties pursuant to the NCWHA on behalf of herself and the Rule 23 North Carolina Class, defined as "*all current and former hourly-paid, non-exempt employees, employed in the position of call center agent who worked for Defendant in North Carolina at any time within the two (2) years preceding the commencement of this action and the date of judgment ("Rule 23 North Carolina Class")*.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

13. This Court has jurisdiction over this action pursuant to 29 U.S.C. §216(b), which provides, in relevant part, that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction." *See* 29 U.S.C. § 216(b).

14. This Court has supplemental jurisdiction over the North Carolina claims pursuant to 28 U.S.C. § 1367 because they are part of the same case and controversy as Plaintiff's federal claims.

15. This Court has personal jurisdiction over Defendant because it is domiciled in North Carolina.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district.

## PARTIES

17. Plaintiff Alexis Mintz is a resident of Hickory, North Carolina.

18. Plaintiff worked for Defendant as a call center agent from approximately June 2022 to approximately September 2023.

19. Defendant is a corporation registered in North Carolina with a principal address located at 8210 W. Market Street, Greensboro, NC 27409.

20. Pursuant to 29 U.S.C. § 216(b), Plaintiff Alexis Mintz has signed a consent form to join this lawsuit, which is attached as **Exhibit 1**.

## GENERAL ALLEGATIONS

21. The foregoing paragraphs are hereby incorporated by reference as though the same were fully set forth at length herein.

22. Defendant employs call center agents to handle inbound telephone calls from Defendant's clients and customers.

23. At all times relevant to this action, Defendant was an enterprise whose annual gross volume of sales made or business done exceeded $500,000.

24. At all times relevant to this action, Defendant was an enterprise that has had employees engaged in commerce or in the production of goods for commerce, and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

25. Call center agents were engaged in commerce, and thus subject to individual coverage under the FLSA.

26. At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

27. Call center agents were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

28. Defendant "suffered or permitted" call center agent to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

29. Defendant classified call center agents as non-exempt employees and paid them on an hourly basis without any guaranteed, predetermined amount of pay per week.

30. From approximately June 2022 to approximately September 2023, Plaintiff worked for Defendant as a call center agent.

31. In order to perform their jobs, call center agents were required to start up their computers, open, log-in to, and connect to various computer systems and applications, and review work-related e-mails and other information.

32. Call center agents performed these activities before their shifts and/or upon returning from their meal breaks.

33. However, call center agents were not actually "clocked in" for their shifts until *after* the computer start-up/log-in process was complete, meaning that they performed work for which they were not compensated.

34. Additionally, call center agents performed work after their scheduled shift including, *inter alia*, shutting down applications, turning off their computers, dropping off mail, and dropping off deposits.

35. Further, call center agents were required to wait until all call center agents were logged-off and ready to leave per Defendant's policy that call center agents must be escorted out of the building at the end of their scheduled shift.

36. The work performed after their scheduled shift was performed off-the-clock and not compensated.

37. The off-the-clock time call center agents spent starting up and logging into required systems and applications directly benefitted Defendant.

38. The off-the-clock time call center agents spent logging-out of the computers, shutting down their computers, dropping off mail, dropping off files, and waiting to be escorted from the building directly benefited Defendant.

39. The start-up/log-in process was an essential part of the call center agents' job responsibilities.

40. The log-off/shut-down process, dropping off mail, dropping off deposits, and waiting to be escorted out of the building at the end of their scheduled shift was an essential part of the call center agents' job responsibilities.

41. At all relevant times, Defendant controlled call center agents' work schedules, duties, protocols, applications, assignments, and employment conditions.

6

42. Despite knowing that Plaintiff and other call center agents performed start-up/log-in activities before and after their shifts, Defendant and their managers did not make an effort to stop or otherwise disallow this off-the-clock work and instead allowed and permitted it to happen.

43. Defendant possesses, controls, and/or has access to information and electronic data that shows the times call center agents started up and logged into their computer systems and applications each day.

44. Defendant was able to track the amount of time that call center agents spent in connection with their start-up/log-in activities; however, Defendant failed to pay call center agents for such time.

45. Defendant used their adherence and attendance policies against call center agents by disciplining call center agents if they were not logged into their systems and ready to handle calls by the start of their scheduled shift time.

46. Defendant used their adherence and policies against call center agents by requiring them to shut-down/turn off their computers after clocking out of their scheduled shift and wait to be escorted out of the building.

47. These policies coerced call center agents into beginning the process of starting up and logging into their computers systems and applications and reading company e-mails and instructions prior to the start of their scheduled shift time.

48. Defendant's policies and practices deprived call center agents of wages owed for the start-up/log-in activities, shut down/log-off activities, and time spent awaiting an escort from the building after clocking out, described above.

49. Because call centers agents often worked in excess of forty (40) hours in a workweek, Defendant's pay practices also deprived them of overtime pay at a rate of 1.5 times their regular rate of pay.

50. Plaintiff typically worked five (5) days per week, Monday through Friday.

51. Plaintiff regularly worked more than forty (40) hours in a workweek and was not paid for all hours worked in such weeks as a result of the violations alleged herein.

## FLSA COLLECTIVE ACTION ALLEGATIONS

52. The foregoing paragraphs are hereby incorporated by reference as though the same were fully set forth at length herein.

53. This action is brought as a collective action to recover unpaid overtime compensation and liquidated damages owed to Plaintiff and all similarly situated current and former employees of Defendant.

54. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of the FLSA Collective, defined as:

> *All current and former hourly-paid, non-exempt employees employed in the position of call center agent who worked for Defendant in any place covered by the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., including, but not limited to, the United States, Puerto Rico, the Virgin Islands, American Samoa, and Guam, at any time within the three (3) years preceding the commencement of this action and the date of judgment ("FLSA Collective").*

55. Plaintiff reserves the right to amend this definition as necessary.

56. Excluded from the proposed FLSA Collective are Defendant's executive, administrative, and professional employees, including computer professionals and outside sales persons.

57. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the putative members of the FLSA Collective are "similarly situated" to

Plaintiff under 29 U.S.C. § 216(b) because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

58. The employment relationships between Defendant and every FLSA Collective member is the same and differ only by name, location, and rate of pay. The key issue – whether Defendant failed to pay call center agents for preliminary start-up/log-in time and post-shift time, and whether such time is compensable – do not vary substantially among the FLSA Collective members.

59. Plaintiff estimates the FLSA Collective, including both current and former employees over the relevant period, will include over fifty (50) members. The precise number of the FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

60. Plaintiff will request the Court to authorize notice to all current and former similarly situated employees employed by Defendant, informing them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid compensation, overtime compensation, and liquidated damages under the FLSA.

**RULE 23 CLASS ACTION ALLEGATIONS**

61. The foregoing paragraphs are hereby incorporated by reference as if fully set forth at length herein.

62. Plaintiff brings this action individually, and on behalf of the following class of similarly situated individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> *All current and former hourly-paid, non-exempt employees, employed in the position of call center agent who worked for Defendant in North Carolina at any time within the two (2) years preceding the commencement of this action and the date of judgment ("Rule 23 North Carolina Class").*

9

63. The members of the Rule 23 North Carolina Class are so numerous that joinder of all members is impractical. The Rule 23 North Carolina Class members may be informed of the pendency of this action by direct mail, e-mail, and text message.

64. Pursuant to Federal Rules of Civil Procedure 23(a)(2), there are questions of law and fact common to the Rule 23 North Carolina Class, including, but not limited to:

    A. Whether the Rule 23 North Carolina Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

    B. Whether the time Rule 23 North Carolina Class members spend on turn-off/log-out activities, dropping off mail, dropping off deposits, and awaiting escort from the building after "clocking out" for each shift is compensable time; and

    C. Whether Rule 23 North Carolina Class members are owed wages and overtime wages for time spent performing pre-shift and post-shift activities and, if so, the appropriate amount thereof.

65. Plaintiff's claims are typical of the claims of the Rule 23 North Carolina Class members. Plaintiff is a former employee of Defendant and was employed as an hourly-paid, non-exempt call center agent who has suffered similar injuries as those suffered by the Rule 23 North Carolina Class members as a result of Defendant's failure to pay wages and overtime compensation. Defendant's conduct of violating the NCWHA has impacted the Rule 23 North Carolina Class in the exact same way.

66. Plaintiff will fairly and adequately represent and protect the interests of the Rule 23 North Carolina Class. Plaintiff is similarly situated to the Rule 23 North Carolina Class and has no conflict with the Rule 23 North Carolina Class members.

67.     Plaintiff is committed to pursuing this action and has retained competent counsel experienced in class action litigation.

68.     Pursuant to Rule 23(b)(2), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, this action is properly maintained as a class action because:

   A.     The prosecution of separate actions by or against individual members of the Rule 23 North Carolina Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Rule 23 North Carolina Class that would establish incompatible standards of conduct for Defendant;

   B.     Defendant, by failing to pay wages and overtime compensation when they became due and owing in violation of the NCWHA has acted or refused to act on grounds generally applicable to the Rule 23 North Carolina Class, thereby making equitable relief appropriate with respect to the Rule 23 North Carolina Class as a whole; and

   C.     The common questions of law and fact set forth above applicable to the Rule 23 North Carolina Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the case, especially with respect to consideration of consistency, economy, efficiency, fairness and equity, as compared to other available methods for the fair and efficient adjudication of the controversy.

69.     A class action is also superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impractical. The Rule 23 North Carolina Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense if these claims were to be brought individually.

70. Additionally, the damages suffered by each Rule 23 North Carolina Class member may be relatively small, the expenses and burden of individual litigation would make it difficult for the Rule 23 North Carolina Class members to bring individual claims. The presentation of separate actions by individual Rule 23 North Carolina Class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of each member of the Rule 23 North Carolina Class to protect his or her interests.

## COUNT I
## FAIR LABOR STANDARDS ACT
## 29 U.S.C. § 201, *et seq.*
## FAILURE TO PAY OVERTIME COMPENSATION
**(*Brought on an Individual and FLSA Collective Basis*)**

71. The foregoing paragraphs are hereby incorporated by reference as if fully set forth at length herein.

72. Pursuant to Section 206(b) of the FLSA, employees must be compensated for every hour worked in a workweek.

73. Moreover, under Section 207(a)(1) of the FLSA, employees must be paid overtime equal to 1.5. times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week.

74. In most workweeks, Plaintiff and the FLSA Collective members worked over forty (40) hours.

75. Defendant required Plaintiff and the FLSA Collective members to perform start-up/log-in activities before their shifts but failed to pay these employees the federally mandated overtime compensation for all time worked.

76. The start-up/log-in activities performed by Plaintiff and the FLSA Collective members every session are an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

77. Defendant required Plaintiff and the FLSA Collective members to perform, *inter alia*, log-off/shutdown activities, mail and deposit drop-offs, and await escort from the building after their shifts, but failed to pay these employees the federally mandated overtime compensation for all time worked.

78. The log-off/shutdown activities, mail and deposit drop-offs, and awaiting escort performed by Plaintiff and the FLSA Collective members every session are an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

79. In workweeks in which Plaintiff and the FLSA Collective members worked in excess of forty (40) hours, the uncompensated pre-shift and post-shift time should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage. 29 U.S.C. § 207.

80. Defendant's violations of the FLSA were knowing and willful.

81. Defendant knew or could have easily determined how long it took for its call center agents to perform pre-shift and post-shift activities and Defendant could have properly compensated Plaintiff and the FLSA Collective members for such time, but did not.

82. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, and employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## NORTH CAROLINA WAGE AND HOUR ACT
### N.C. Gen. Stat. § 95-25.1, *et seq.*
### **FAILURE TO PAY WAGES AND OVERTIME COMPENSATION**
(***Brought on an Individual and Rule 23 Class Basis***)

83. The foregoing paragraphs are hereby incorporated by reference as if fully set forth at length herein.

84. The class period for this cause of action is at least two years from the date of the filing of the instant Complaint.

85. At all relevant times, Defendant has employed and/or continues to employ Plaintiff and Rule 23 North Carolina Class members within the meaning of the NCWHA.

86. Defendant employs Plaintiff and Rule 23 North Carolina Class members within the State of North Carolina.

87. Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages, on the employee's regular payday.

88. Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-(2).

89. Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant was required to pay Plaintiff and the Rule 23 North Carolina Class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and on-half times the promised wage rate, which is part of all the employees' accrued and earned wages, and which

14

should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

90. Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.8, it is unlawful for an employer to withhold any portion of an employee's wages without the employee's advance written authorization, including the amount and reason for the deduction. If the amount is not available when the employee signs the authorization, the employer must receive advance written notice of the exact amount and of the right to withdraw the authorization.

91. Defendant intentionally refused to pay all wages due as set forth in the preceding paragraphs of this Collective and Class Action Complaint to Plaintiff and the Rule 23 North Carolina Class members in violation of the NCWHA.

92. Defendant was aware that Plaintiff and the Rule 23 North Carolina Class members were not receiving all straight-time wages for all hours worked up to forty (40) and overtime wages for hours worked in excess of forty (40) per week pursuant to the promised straight-time rate and corresponding premium overtime rate.

93. Defendant used its adherence and attendance policies against Plaintiff and the Rule 23 North Carolina Class members by disciplining them if they were not logged into their phones and ready to handle calls by the start of their scheduled shift time.

94. Defendant used its adherence and policies against Plaintiff and the Rule 23 North Carolina Class members with respect to the post-shift work performed.

95. Defendant's policies coerced Plaintiff and the Rule 23 North Carolina Class members into performing pre-shift and post-shift work without compensation.

96. At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiff and the Rule 23 North Carolina Class members all owed, earned, and

promised wages, including for work performed by Plaintiff and the Rule 23 North Carolina Class members before the start and after the end of their scheduled shifts, and at the appropriate rate that Plaintiff and the Rule 23 North Carolina Class members are lawfully entitled to for hours worked up to forty (40) in a single workweek as well as hours worked in excess of forty (40) in a single workweek.

97. At all relevant times, Defendant, pursuant to its policies and practices, withheld wages and overtime wages from Plaintiff and the Rule 23 North Carolina Class members for work performed before the start and after the end of their scheduled shifts without providing them the required advance written authorization and without providing advance written notice of the amount to be withheld.

98. Consistent with the above, Defendant's failure to pay Plaintiff and the Rule 23 North Carolina Class members all owed, earned, and promised wages was in violation of N.C. Gen. Stat. § 95-25.6.

99. As a result of Defendant's unlawful policies and practices, Plaintiff and the Rule 23 North Carolina Class members have been deprived of compensation and overtime wages due and owing.

100. Defendant's failure to pay Plaintiff and the Rule 23 North Carolina Class members all owed, earned, and promised wages and overtime compensation, despite the fact that Defendant knew of its obligations under the law, entitled Plaintiff and the Rule 23 North Carolina Class members to liquidated damages in an amount equal to the amount of unpaid waged under N.C. Gen. Stat. § 95-25.22(a1).

101. As a result of Defendant's unlawful acts, Plaintiff and the Rule 23 North Carolina Class members have been deprived of all compensation due under the law, and are entitled to

16

Case 1:23-cv-01070-TDS-JLW    Document 1    Filed 12/07/23    Page 16 of 19

recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff, on behalf of herself and the FLSA Collective and Rule 23 North Carolina Class members, respectfully requests that this Court grant the following relief against Defendant:

A. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

B. Certifying this case as a class action for the Rule 23 North Carolina Class pursuant to Rule 23(b)(2) and (b)(3) with respect to the NCWHA claims set forth herein (Count II);

C. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members and Rule 23 North Carolina Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including publishing of notice in a manner that is reasonably calculated to apprise the collective members of their rights by law to join and participate in this lawsuit;

D. Designating Plaintiff as the representative of the FLSA Collective and Rule 23 North Carolina Class and undersigned counsel as Class and Collective counsel for the same;

E. Finding that Defendant willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

F. Finding that Defendant violated the North Carolina Wage and Hour Act as alleged herein and that said violations were intentional, willful, oppressive, fraudulent and malicious;

G. Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective the full amount of compensatory damages and liquidated damages available by law;

H. Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the Rule 23 North Carolina Class the full amount of compensatory damages and liquidated damages available by law;

I. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

J. Granting an incentive award for the Named Plaintiff, Alexis Mintz, for serving as representative of the FLSA Collective members and Rule 23 North Carolina Class members in this action;

K. Awarding pre- and post-judgment interest to Plaintiff on these damages; and

L. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff Alexis Mintz, individually and on behalf of all other FLSA Collective members and Rule 23 North Carolina members, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled claims.

Dated: December 7, 2023

Respectfully submitted,

By: *s/ Brian Kinsley*
Brian L. Kinsley
NC Bar No.: 38683
**CR LEGAL TEAM, LLP**
2400 Freeman Mill Road
Greensboro, NC 27406

T: (800) 288-1529
BLKinsley@crlegalteam.com

*Local Counsel for Plaintiff*


Edmund C. Celiesius (to seek Special Appearance)
**BROWN, LLC**
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5279
ed.celiesius@jtblawgroup.com

*Lead Counsel for Plaintiff*