IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

No. 1:23-cv-1070

| | |
|---|---|
| ALEXIS MINTZ, Individually and on behalf of all other similarly situated, | ) ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| SUMMIT CREDIT UNION, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR PRELIMINARY CERTIFICATION OF CLASS FOR SETTLEMENT PURPOSES**

# TABLE OF CONTENTS

I.          INTRODUCTION .................................................................................1

II.         BACKGROUND ...................................................................................2

   A.    PLAINTIFF'S CLAIMS.................................................................2

   B.    DEFENDANT'S DEFENSES ........................................................4

III.        PROCEDURAL HISTORY ...................................................................4

IV.         SUMMARY OF SETTLEMENT..........................................................6

   A.    COLLECTIVE DEFINITION ........................................................6

   B.    CLASS DEFINITION ...................................................................6

   C.    SETTLEMENT AMOUNT ...........................................................6

   D.    CALCULATION OF COLLECTIVE MEMBERS'
       SETTLEMENT SHARES ..............................................................7

   E.    CALCULATION OF CLASS MEMBERS'
       SETTLEMENT SHARES ..............................................................7

   F.    INCENTIVE AWARD...................................................................8

   G.    FEES AND EXPENSES OF THE SETTLEMENT
       ADMINISTRATOR .......................................................................9

   H.    PAYMENT OF ATTORNEYS' FEES AND COSTS ...................9

   I.    SETTLEMENT ADMINISTRATION, OPTING IN
       AND/OR OUT AND OBJECTIONS ..........................................10

   J.    RELEASE OF CLAIMS .............................................................12

V.          THE COURT SHOULD PRELIMINARILY
APPROVE THE SETTLEMENT.......................................................13

   A.    THE SETTLEMENT SATISFIES ALL OF THE
       STANDARDS FOR PRELIMINARY APPROVAL ..................16

    1.    The Settlement is Procedurally Fair .............................................16
    2.    The Settlement is Fair, Reasonable and Adequate ......................18

   B.    CERTIFICATION OF A SETTLEMENT
       COLLECTIVE AND CLASS IS APPROPRIATE ....................27

    1.    Collective Certification...............................................................27
    2.    Class Certification .....................................................................28

|  | C. | THE COURT SHOULD APPOINT BROWN, LLC AND COX, STANSBERRY & KINSLEY AS COLLECTIVE AND CLASS COUNSEL | 32 |
|  | D. | CLASS COUNSEL'S REQUEST FOR FEES AND COSTS IS REASONABLE | 33 |
| 1. |  | Plaintiff Counsel's Fees Are Reasonable | 34 |
| 2. |  | Lodestar Method | 35 |
| 3. |  | The *Johnson* Factors | 36 |
| 4. |  | Percentage of the Fund Method | 37 |
|  | E. | COSTS AND EXPENSES ARE REASONABLE | 38 |
|  | F. | THE PROPOSED NOTICE PROVIDES ADEQUATE NOTICE TO SETTLEMENT CLASS MEMBERS | 39 |
| 1. |  | The Notice Satisfies Due Process | 39 |
| 2. |  | The Notice Is Accurate, Informative and Easy to Understand | 41 |
|  | G. | THE COURT SHOULD SET A FINAL FAIRNESS HEARING | 42 |
| VI. |  | CONCLUSION | 43 |

# I. INTRODUCTION

This unopposed motion seeks preliminary approval of a pre-certification wage and hour class action settlement in the amount of $53,628.77 between Alexis Mintz ("Plaintiff Mintz" or "Class Representative") on behalf of herself and each of the twenty-five other Collective Members and Class Members as defined herein, on the one hand, and Summit Credit Union ("Defendant").

The Settlement resolves wage and hour claims against Defendant on behalf of two largely overlapping groups of persons: (i) a Settlement Collective consisting of all current and former hourly-paid, non-exempt employees, who were employed with Defendant and worked in the position of a Member Service Call Center representative during any time from March 8, 2021 to July 30, 2024 ("Collective Period") ("Collective Members"); and (ii) a Settlement Class consisting of all current and former hourly-paid, non-exempt employees, who were employed with Defendant in North Carolina and worked in the position of a Member Service Call Center representative during any time from December 7, 2021 to July 30, 2024 ("Class Period") ("Class Members").

The Settlement, which obligates Defendant to pay a $53,628.77 Total Settlement Amount, offers finality and certainty to disputed claims that Defendant denies, and was reached after substantial arms-length negotiations conducted by the Parties. During the Final Approval stage, Collective and Class Counsel will apply to the Court for an award of attorneys' fees and costs of up to $20,000.00.

1

Because the Settlement is fair and reasonable and was negotiated at arms' length by experienced counsel, it should be preliminarily approved. Collective and Class Counsel's requested fees and expenses are also reasonable and should be preliminarily approved. To that end, the Parties request that the Court enter an order: (1) preliminarily approving the Settlement and conditionally certifying the Settlement Collective and Settlement Class for settlement purposes only; (2) approving their proposed Hybrid Notice Packet to be disseminated to all persons who qualify as both Collective Members and Class Members pursuant to the Settlement Agreement;[1] (3) approving their proposed Collective Notice Packet to be disseminated to all persons who only qualify as Collective Members but not Class Members pursuant to the Settlement Agreement;[2] (4) appointing Brown, LLC and Cox, Stansberry & Kinsley as Collective and Class Counsel; (5) appointing Apex Class Action as the Settlement Administrator; and (6) scheduling a hearing for final approval of the Settlement.

## II. BACKGROUND

### A. Plaintiff's Claims

In this putative wage and hour collective and class action, Plaintiff Alexis Mintz, individually and on behalf of similarly situated employees, asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the North Carolina Wage and

---

[1] The proposed Hybrid Notice Packet, comprised of the Collective Notice Packet, comprised of the Notice of Proposed Collective and Class Action Settlement and Final Approval Hearing, the Employee Information Sheet, the Consent-to-Join Form, and the Election Not to Participate Form, are attached to the Settlement Agreement as Exhibits B, C, D, and E, respectively.

[2] The proposed Collective Notice Packet, comprised of the Notice of Proposed Collective Action Settlement and Final Approval Hearing, the Employee Information Sheet, and the Consent-to-Join Form, are attached to the Settlement Agreement as Exhibits A, C, and D, respectively.

2

Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*., alleging that Defendant Summit Credit Union failed to compensate call center agents for pre-shift and post-shift work (Dkt. No. 17, Am. Compl. ¶¶ 1-2, 8-11, 54-56, 85-87). Specifically, Plaintiff contends that Defendant required call center agents to engage in work-related activities before clocking in—including starting up computers, logging into applications, and reviewing work-related emails—and after clocking out—including logging off systems, shutting down computers, dropping off mail and deposits, and waiting for an escort out of the facility—without compensation (Am. Compl. ¶¶ 6-10, 33-43). Plaintiff alleges that these practices resulted in systematic underpayment of wages and overtime compensation in violation of the FLSA and NCWHA (Am. Compl. ¶¶ 50-52, 75-81, 89-91).

Plaintiff seeks to recover unpaid wages, overtime pay, liquidated damages, and other relief pursuant to 29 U.S.C. §§ 207, 216(b) and N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a1) (Am. Compl. ¶¶ 10-11, 56, 102-103). Plaintiff brings these claims as a collective action under the FLSA on behalf of all similarly situated current and former call center agents employed by Defendant within the past three years and as a class action under Rule 23 on behalf of North Carolina call center agents employed within the past two years (Am. Compl. ¶¶ 55-56, 64). Plaintiff alleges that Defendant's violations were knowing and willful, as Defendant was aware of the time employees spent performing uncompensated pre- and post-shift work but failed to ensure compliance with federal and state wage laws (Am. Compl. ¶¶ 83-84, 94-96).

### B. Defendant's Defenses

Summit Credit Union denies each and all of the claims alleged by Plaintiff in this action. Defendant expressly denies any and all charges of wrongdoing or liability alleged in the instant action. To the contrary, Defendant contends that, in compliance with applicable state and federal laws, its call center agents have been paid all wages due. As a result, Defendant believes Plaintiff's claim for unpaid wages, liquidated damages, pre-judgment interest, attorneys' fees, and costs will fail. Defendant also denies that the asserted claims are appropriate for collective treatment under 29 U.S.C. § 216(b) or class treatment under Fed. R. Civ. P. 23, except for purposes of settlement.

## III. PROCEDURAL HISTORY

Plaintiff filed a collective and class action complaint against Summit Education Association, Inc. d/b/a Summit Credit Union on December 7, 2023. (Dkt. No. 1) After obtaining an extension of time, Defendant Summit Education Association, Inc. filed its Answer to Plaintiff's Complaint on January 31, 2024. (Dkt. No. 7) Among other things, Summit Education Association, Inc. denied that it employed Ms. Mintz or any other call center employees and denied that it was a proper defendant in this case. On April 19, 2024, Plaintiff filed her First Amended Complaint against Defendant Summit Credit Union with Defendant's consent, and removed Summit Education Association, Inc. from the lawsuit. (Dkt. No. 17) Summit Credit Union filed its Answer to Plaintiff's First Amended Complaint on May 23, 2024, generally denying the allegations against it and any violation of the law. (Dkt. No. 19)

4

On June 14, 2024, Plaintiff filed an unopposed Motion for Extension of Time to Complete Discovery. (Dkt. No. 20) On July 17, 2024, the parties filed a Joint Motion to Stay Proceedings so that they could conduct informal discovery and attempt to resolve the matter. (Dkt. No. 21) The Court granted the motion on July 18, 2024 and stayed the action through October 31, 2024. (Dkt. No. 22) On October 24, 2024, the parties filed a Joint Motion to Stay and Status Update with the Court. (Dkt. No. 23) The Court granted the motion on October 25, 2024 and extended the stay of the action through November 30, 2024. (Dkt. No. 24) The parties filed a Joint Status Report and Motion to Extend Stay on November 22, 2024. (Dkt. No. 25) The Court granted the motion and extended the stay through December 22, 2024. (Dkt. No. 26)

During the stay, Defendant provided Plaintiff's counsel with time and payroll data, policy documents and other confidential materials to allow the parties to evaluate their settlement positions. *See* Declaration of Nicholas Conlon, filed herewith ("Conlon Decl."), ¶¶ 5-6. On December 13, 2024, the parties filed a Joint Status Report, notifying the Court that the parties had reached an agreement that resolved all the disputes in this matter. (Dkt. No. 27)

## IV.    SUMMARY OF SETTLEMENT[3]

### A.    Collective Definition

The Parties have agreed that the following Settlement Collective should be certified for settlement purposes pursuant to 29 U.S.C. § 216(b): all current and former hourly-paid, non-exempt employees, who were employed with Defendant and worked in the position of a Member Service Call Center representative during any time from March 8, 2021 to July 30, 2024 ("Collective Period") ("Collective Members"). Settlement Agreement, § II.

### B.    Class Definition

The Parties have agreed that the following Settlement Class should be certified for settlement purposes pursuant to Fed. R. Civ. P. 23: all current and former hourly-paid, non-exempt employees, who were employed with Defendant in North Carolina and worked in the position of a Member Service Call Center representative during any time from December 7, 2021 to July 30, 2024 ("Class Period") ("Class Members"). Settlement Agreement, § II.

### C.    Settlement Amount

The Settlement obligates Defendant to pay a Total Settlement Amount of up to $53,628.77, *See* Settlement Agmt., § IV.2, which will cover all settlement payments to Collective Members who file timely and valid Consent to Join forms and to Class Members who do not opt out, incentive award to Plaintiff Alexis Mintz, Collective and Class

---

[3] The Parties modeled the Settlement Agreement and exhibits off of a settlement approved by Judge N. Carlton Tilley, Jr. in a similar collective and class wage-and-hour case in which Plaintiff's counsel was appointed class counsel. *See Toney v. B&G Foods, Inc*., No. 1:20CV37, 2022 U.S. Dist. LEXIS 169243 (M.D.N.C. Mar. 10, 2022) (granting preliminary approval); Document 73 Filed 07/25/22 (granting final approval).

6

Counsel's attorneys' fees and expenses, and the Settlement Administrator's fees. Defendant will pay the employer portion of payroll taxes applicable to the settlement payments designated as wages in addition to the Total Settlement Amount.

The amount remaining after deduction of the incentive award to Plaintiff Alexis Mintz, Collective and Class Counsel's attorneys' fees and expenses, and the Settlement Administrator's fees and expenses is the "Net Settlement Amount," which will be divided into two funds: (1) the FLSA Collective Fund (consisting of 56.32% of the Net Settlement Amount), which will be distributed on a pro rata basis to Collective Members who submit Consent-to-Join Forms, in exchange for a release of their FLSA claims, *id.* § IV.6(a); and (2) the North Carolina Class Fund (consisting of 43.68% of the Net Settlement Amount), which will be distributed on a pro rata basis to Class Members who do not opt out, in exchange for a release of their claims under North Carolina law. *Id.* § IV.6(b).

### D.      Calculation of Collective Members' Settlement Shares

Each Collective Member's settlement share takes into account the number of weeks that the Collective Member worked in a position covered by the Settlement Agreement during the Collective Period. *See* Settlement Agmt., § IV.6(a).

### E.      Calculation of Class Members' Settlement Shares

Each Class Member's settlement share takes into account the number of weeks that the Class Member worked in a position covered by the Settlement Agreement during the Class Period. *See* Settlement Agmt., § IV.6(b).

Any amount of Collective and Class Counsel's attorneys' fees, litigation costs, settlement administration costs, and/or Incentive Award that the Court does not approve

will be added to the Net Settlement Amount and distributed to Settlement Collective Members who file timely and valid Consent to Join Forms and to Class Members who do not opt out of the Settlement. *See* Settlement Agmt., § IV.8(b).

### F.    Incentive Award

Plaintiffs and Collective and Class Counsel will apply to the Court for an Incentive Award of $5,000 for Alexis Mintz, as part of Plaintiffs' Motion for Final Approval of this Settlement and Approval of Attorneys' Fees, Litigation and Administrative Costs, and Incentive Award. *See* Settlement Agmt., § IV.7(d). "At the end of a successful class action, it is common for trial courts to compensate class representatives for the time and effort they invested to benefit the class." *Reynolds v. Fid. Invs. Institutional Operations Co.*, No. 1:18-CV-423, 2020 U.S. Dist. LEXIS 2718, at *13-14 (M.D.N.C. Jan. 7, 2020) (citing *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 U.S. Dist. LEXIS 2392, *4 (M.D.N.C. Jan. 10, 2007). Plaintiff Mintz provided documents and information to Class Counsel, reviewed documents, dedicated substantial time to this case, and faced the risk of a cost award against her. Conlon Decl., ¶ 7. Without the significant work done by this Plaintiff, there would be no other employees benefited from the Settlement. *Id.* The proposed Incentive Award is further supported by Plaintiff's agreement to a general release of claims. *See* Settlement Agmt., § IV.4(C). The Incentive Award of $5,000 to Alexis Mintz is fair and reasonable. *See Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 502 (M.D.N.C. 2018) (approving $10,000 service award to named plaintiff in FLSA case); *DeWitt v. Darlington Cty.*, 2013 U.S. Dist. LEXIS 172624, 2013 WL 6408371, at *14-15 (D.S.C. Dec. 6, 2013) (citing cases approving incentive payments

8

in FLSA collective and other employment-related class actions, with $10,000 to $20,000 for named plaintiffs); *Carroll v. Northampton Rests., Inc.*, 2024 U.S. Dist. LEXIS 51220, at *18 (E.D. Va. Mar. 21, 2024) (approving incentive award of $9,000).

### G. Fees and Expenses of the Settlement Administrator

The Parties seek Court approval for the appointment of Apex Class Action, as the Settlement Administrator (the "Settlement Administrator"). *See* Settlement Agmt., § IV.3. The Settlement Administrator's fees and expenses shall be paid from the Total Settlement Amount. The Settlement Administrator will distribute the Collective and Hybrid Notice Packets via both U.S. First Class mail and e-mail; receive and process Consent-to-Join Forms, Election Not to Participate Forms, and/or objections, if any; issue settlement checks; and handle Settlement-related administrative work, such as tax reporting. *Id.* § IV. The Settlement Administrator's fees and costs are projected to be $4,005.21. *Id.* § IV.3.

### H. Payment of Attorneys' Fees and Costs

If the Court preliminarily approves the Settlement, Collective and Class Counsel will apply to the Court for an award of attorneys' fees and costs of up to $20,000.00 in their Motion for Final Approval of this Settlement and Approval of Attorneys' Fees, Litigation and Administrative Costs, and Incentive Award, to submitted simultaneously with Plaintiff's motion for Final Approval. *See* Settlement Agmt., § IV.7(a)–(b). In a class action settlement involving a common fund, the attorneys responsible for creating the pool of settlement benefits set forth in the settlement agreement are entitled to be compensated for their time, efforts, and risks. The primary benefit that this Settlement provides to the Collective and Class Members is the creation of a gross settlement pool from which the

9

they will receive compensation for the overtime claims raised in the lawsuit. The amount requested in attorneys' fees is reasonable according to standards applied by courts in the Fourth Circuit.

## I.     Settlement Administration, Opting In and/or Out and Objections

Subject to Court approval, the Settlement shall be administered by the Settlement Administrator in accordance with the following deadlines established:

| | |
|---|---|
| Defendant shall provide the Settlement Administrator with the electronic data of the Collective and Class Members, including names, last-known mailing addresses, Social Security numbers, and each Collective and Class Member's number of Eligible Workweeks | Within 30 days after the Preliminary Approval Order |
| Deadline for the Settlement Administrator to send Collective and Hybrid Notice Packets to the Collective and Class Members via U.S. First Class mail | Within 45 days after the Preliminary Approval Order |
| Deadline for Class Members to postmark or transmit Election Not to Participate in Settlement forms ("opt-out forms") | Within 21 days before the Final Fairness Hearing or, if no specific date for the Final Fairness Hearing has then been set, 60 days after the Settlement Administrator mails the Hybrid Notice Packets |
| Deadline for Collective Members to postmark or transmit Consent to Join Forms | Within 21 days before the Final Fairness Hearing or, if no specific date for the Final Fairness Hearing has then been set, 60 days after the Settlement Administrator mails the Collective Notice Packets |
| Deadline for Collective and Class Members to postmark or transmit objections to the Settlement | Within 14 days before the Final Fairness Hearing |
| Deadline for the Settlement Administrator to conduct a second mailing for any Collective or Class Member whose Notice Packet is | Within 20 days of the date of the initial mailing of Hybrid and Collective Notice Packets |

| | |
|---|---|
| returned as undelivered and for whom a forwarding address is provided by the U.S. Postal Service or obtained through skip-tracing and provide Defendant's counsel with a listing of all Collective and Class Members whose Notice Packet was returned as undelivered upon initial mailing | |
| Deadline for the Settlement Administrator to mail settlement checks to Participating Collective and Class Members pursuant to the formula in Section IV.6 of the Settlement Agreement | Within 10 days after the Effective Date |
| Deadline for Collective and Class Members to cash settlement checks | Within 120 days after the Settlement Administrator mails the settlement checks |
| Deadline for the Settlement Administrator to donate all checks not cashed to the National Employment Law Project | After 30 days following the Collective and Class Members' deadline to cash settlement checks |

Collective and Class Members who wish to object to the Settlement must submit an objection to counsel for the Parties, no later than 14 days before the Final Fairness Hearing. *See* Settlement Agmt., § IV.9(b). Collective and Class Members who do not submit written objections in the manner and by the deadline specified above will be deemed to have waived any objections and will be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement or other related matters. *See* Settlement Agmt., § IV.9(b). Counsel for the Parties will jointly file any objections they receive with the Court prior to the Final Approval hearing. Class Members who choose not to participate in the Settlement must submit an Election Not to Participate in Settlement form to the Settlement Administrator, postmarked or transmitted no later than 21 days before the Final Fairness Hearing or, if no specific date for the Final Fairness Hearing has then been set, sixty (60) days after the date of mailing of the Hybrid Notice Packets. *See* Settlement Agmt., § IV.9.

### J.      Release of Claims

Collective Members submit timely, valid Consent-to-Join Forms will release the

following claims upon the Effective Date:

> All claims, debts, losses, demands, obligations, rights, liabilities, damages,
> penalties, complaints, and causes of action ("Claims") arising under the Fair
> Labor Standards Act, that have been brought in the Action, or that could
> have been brought in the Action arising at any time from the beginning of
> time through the Effective Date, including all Claims for deductions from
> pay and any and all minimum wage, straight-time, and overtime claims, and
> any interest, penalties, liquidated damages, and attorneys' fees and costs
> relative to all such Claims. Collective Members who do not submit timely,
> valid consent forms will not release any claims under the Fair Labor
> Standards Act.

*See* Settlement Agmt., § IV.4(A).

Collective Members who do not opt in will not release any FLSA claims.

Class Members who do not timely and validly elect not to participate in the

Settlement will release the following claims upon the Effective Date:

> All Claims, other than those arising under the Fair Labor Standards Act, that
> have been brought in the Action, or that could have been brought in the
> Action concerning or relating to wages or hours, arising at any time from the
> beginning of time through the Effective Date, including all Claims for
> deductions from pay and any and all minimum wage, straight-time, and
> overtime Claims, and any interest, penalties, liquidated damages, and
> attorneys' fees and costs relative to all such Claims, including all Claims
> under the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, *et
> seq*.

*Id*., § IV.4(B).

Class Members who opt out will not release any Claims under North Carolina law.

In consideration of their Settlement Payments and the other terms and conditions

of the Settlement, Plaintiff Alexis Mintz will release any and all known and unknown

claims against Defendant, but will maintain the right to enforce the Agreement, and will not waive any claims that cannot be waived as a matter of law. *Id.*, § IV.4(C).

## V. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

A court may approve a settlement that will bind class members "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Similarly, under § 216(b), a proposed settlement of FLSA claims must be presented to the district court "for review and determination that the settlement is fair and reasonable." *Kirkpatrick*, 352 F. Supp. 3d at 502. In reviewing an FLSA settlement for fairness, district courts in this circuit generally apply the same fairness factors under Rule 23(e).[4] *Id.*

As described by the Manual for Complex Litigation, judicial approval of a proposed class settlement is a two-part process. Manual for Complex Litigation (Fourth) § 13.14, at 173 & § 21.632, at 320-21 (2004). First, "the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing." *Id.* If the court finds the settlement is sufficient, i.e., is within the range of possible judicial approval, it will schedule a formal fairness hearing and direct notice to the class. *Id.* at § 21.633, at 321-22. Second, once notice has been disseminated to the class and the relevant evidence has been presented, the court makes the final determination as to whether the settlement is fair, reasonable, and adequate. *Id.* at § 21.634-635, at 322-23.

---

[4] However, the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *See Reynolds v. Fid. Invs. Institutional Operations Co., Inc*., No. 1:18-CV-423, 2020 U.S. Dist. LEXIS 2710, at *12 (M.D.N.C. Jan. 7, 2020) (collecting cases).

13

Courts within the Fourth Circuit favor compromise and settlement of class action suits. *See de la Cruz v. Chopra*, Civil Action No. DKC 18-0337, 2018 U.S. Dist. LEXIS 85213, at *3 (D. Md. May 21, 2018) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982) (stating FLSA settlement agreements should generally be accepted if it is fair and reasonable); *Hall v. Higher One Machs., Inc.*, 2016 U.S. Dist. LEXIS 131009, at *5 (E.D.N.C. Sep. 26, 2016) (providing, in a hybrid FLSA and NCWHA action, that there is a "strong judicial policy in favor of settlements, particularly in the class action context.") (citations omitted); *Velazquez v. Burch Equip., LLC*, 2016 U.S. Dist. LEXIS 29426, at *3 (E.D.N.C. Mar. 8, 2016) (same); *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, at *27 (E.D. Va. June 23, 2009) ("Litigants should be encouraged to determine their respective rights between themselves and there is an overriding public interest in favor of settlement, particularly in class action suits.").

Although district courts have broad discretion in approving the settlement of a class action case, there is a "strong presumption in favor of finding a settlement fair." *See Lomascolo*, 2009 U.S. Dist. LEXIS 89136, at *27; "A settlement fairness hearing is not a trial, and the court should defer to the evaluation and judgment of experienced trial counsel in weighing the relative strengths and weaknesses of the parties' respective positions and their underlying interests in reaching a compromise." *DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *11. "[T]he Court's function in assessing a proposed settlement is to determine whether, as a whole, it is fair, adequate and reasonable to [c]lass [m]embers." *S.C. Nat. Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length

negotiations between experienced, capable counsel after meaningful discovery." Manual for Complex Litigation (Third) § 30.42 (1995); *see also* Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 at 90 (4th ed. 2002) ("There is usually a presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for approval.").

Plaintiffs ask the Court to conduct the initial review of the settlement and find that it is sufficiently fair to warrant public notice and a hearing. Once notice is disseminated, the class members and others may present arguments and evidence for or against the proposed agreement. Manuel for Complex Litigation (Third) § 30.41, 236-37 (1995) (noting that that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval, the court should permit notice of the settlement to be sent to class members. (internal marks omitted)); *see also Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). Accordingly, in considering whether to grant preliminary approval, the Court is not required to extensively evaluate the merits of the settlement or to make a final determination on the adequacy of the settlement because these inquiries are reserved for the final stage of the class settlement approval process. Manual for Complex Litigation (Third) § 30.41, 236-37 (1995). When evaluating whether to grant preliminary approval of a class settlement, the court need "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 (1981). Since preliminary approval is merely the first step that initiates the settlement approval process, any doubts are resolved in favor of approval. *See In re Traffic Exec. Ass'n-E.*

*Railrods*, 627 F.2d 631, 634 (2d Cir. 1980) (preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness").

Because the settlement agreement reached in the instant case is both procedurally and substantively fair, the Court should grant the parties' Motion.

## A. The Settlement Satisfies All of the Standards for Preliminary Approval

Courts consider whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, to determine whether preliminary approval is warranted and whether notice of the proposed settlement should be given to class members and a hearing scheduled to determine final approval. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 13.14, at 172-73 (2004) ("*Manual Fourth*") (at preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."); 4 Newberg on Class Actions § 11.26 (The purpose of the first stage, "preliminary approval," is to determine whether the settlement is within the "range of reasonableness").

### 1. The Settlement is Procedurally Fair

A proposed settlement is procedurally fair when it is reached through vigorous, arms-length negotiations and after experienced counsel had evaluated the merits of plaintiffs' claims. *See Robinson v. Harrison Transp. Servs., Inc.*, 2016 U.S. Dist. LEXIS 86294, at *6 (E.D.N.C. June 30, 2016). This proposed settlement was reached through vigorous, arm's-length negotiations after experienced counsel had evaluated the merits of

16

Plaintiffs' claims and is thus procedurally fair. *See West v. Cont'l Auto., Inc.*, No. 3:16-cv-00502-FDW-DSC, 2018 U.S. Dist. LEXIS 26404, 2018 WL 1146642, at *4 (W.D.N.C. Feb. 5, 2018) ("The Settlement was not hastily arrived at. Indeed, the Settlement followed lengthy discussions and considerable dialogue between the Parties, as well as arms-length negotiations involving extensive argument and counterargument.").

Both Collective and Class Counsel and Defendant's counsel were experienced in wage and hour law, raising a presumption that the Settlement meets the requirements of due process. *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391 (RLM), 2012 U.S. Dist. LEXIS 110300, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012). Furthermore, there is no evidence of any coercion or collusion or any other improper dealing that would indicate that the negotiations were in unfair in any way. *See West*, 2018 U.S. Dist. LEXIS 26404, 2018 WL 1146642, at *5 ("[T]here is no evidence in the record before the Court, nor has there been any suggestion by anyone, that there has been any fraud or collusion among the Parties or their attorneys in arriving at the terms of this Settlement.").

Here the settlement was reached via arm's-length negotiations, conducted by experienced counsel. It was reached after Collective and Class Counsel had conducted a thorough investigation and evaluation of the claims and defenses and engaged in substantial discovery. The work performed included investigating Plaintiff's claims, drafting and filing two complaints, exchanging information and damage models, and corresponding with counsel on highly contested issues. The Parties were vigorously represented by experienced counsel throughout settlement negotiations. There is no evidence of any coercion or collusion or any other improper dealing that would lead to a

17

finding that the negotiations were in any way unfair. Thus, there is no reason to deny preliminary approval on procedural fairness grounds. Moreover, as discussed below, the settlement reached is substantively fair to all parties concerned.

## 2. The Settlement is Fair, Reasonable and Adequate

In evaluating the substantive fairness of a class action settlement, courts in the Fourth Circuit assess the posture of the case, the extent of discovery conducted, the circumstances surrounding the negotiations, and the experience of counsel. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991).

In this analysis, courts within the Fourth Circuit typically consider the factors from the seminal case of *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), commonly known as the "*Grinnell* factors," to determine the substantive fairness of a class action settlement. *See DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *9-10; *Stone*, 749 F. Supp. at 1423; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1172- 73 (4th Cir. 1975) (citing *Grinnell* with approval):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to possible recovery in light of all the attendant risks of litigation

*Grinnell*, 495 F.2d at 463; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975); *see also Jiffy Lube*, 927 F.2d at 158-59; *Lomascolo*, 2009 WL 3094955 at *11.

Here, the balance of the *Grinnell* factors weigh in favor of preliminary approval.

18

### a. Complexity, Expense, Duration (*Grinnell* Factor 1)

This litigation has already lasted for over a year, and the Parties have engaged in substantial discovery. Settling this case at this juncture saves the Parties from prolonged litigation and spares precious judicial resources. "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources." *Stone*, 749 F. Supp. at 1423 (citations omitted); *see also Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *14 ("The complexity, expense, and duration of class action litigation are factors that support approval of a settlement.").

If the Parties continue to litigate, it would require the Parties to produce hundreds of documents, conduct depositions of opt-in Plaintiffs, putative class members, and Defendant's managers, and further investigation and retention of experts to study the time Plaintiffs allege to have spent on the pre/post-shift activities at issue. There are several issues that are contested by the parties that would be the subject of briefing and counter-briefing. As the case nears fuller discovery and trial preparation stages, more contentious issues are expected to arise and the case will likely increase in complexity. The Parties likely would engage in adversarial motion practice, such as Plaintiffs' motion for Rule 23 class certification, Defendant's motion for decertification of the FLSA collective, and dispositive motions, before an eventual trial. Moreover, even post-trial, the ultimate result may be the subject of an appeal and possible remand. It is likely that this litigation would extend for years and cost the Parties hundreds of thousands of dollars or more in attorneys' fees and expenses. This litigation has been sufficiently long, complex and costly and will

19

only become more so as trial approaches. This factor thus weighs in favor of preliminary approval.

### b. Reaction of Class to Settlement (*Grinnell* Factor 2)

Notice of the settlement and its details have not yet been issued to the Collective and Class Members. Each Settlement Collective or Class Member will receive a Hybrid Notice Packet consisting of, inter alia, an appropriate Notice of Settlement, Employee Information Sheet with instructions to opt out into or out of, or object to, the Settlement, and will have an opportunity to be heard at the Final Approval hearing. As such, the Court should more fully analyze this factor after notice issues and the Collective and Class Members are given the opportunity to opt out or object.

### c. Stage and Discovery Completed Litigation and Discovery Have Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

"[C]ourts have a duty to ensure that the settlement does not 'come too early to be suspicious nor too late to be a waste of resources,' and that it is at 'a desirable point in the litigation to reach an agreement without further delay, expense, and litigation.'" *Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*, 573 F. Supp. 2d 205, 212-13 (D.D.C. 2008) (quoting *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 105 (D.D.C. 2004)). The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d 516, 537 (3d Cir. 2004). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the

prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (citation and internal quotation marks omitted).

This case was sufficiently advanced at the time the Settlement was reached. Prior to the Settlement, Collective and Class Counsel interviewed the named Plaintiff, reviewed Plaintiffs' documents, corresponded and exchanged information with Defendant's counsel, reviewed a large volume of documents (including payroll and timekeeping information for the Settlement Class that was used to prepare a damage model), and engaged in lengthy discussions of contested issues. Conlon Decl., ¶¶ 5-6. Such work performed yielded substantial information and allowed the Parties to intelligently and freely discuss the merits of Plaintiff's claims and Defendant's defenses, and thus enabled the Parties to fully evaluate the risks and uncertainties of continued litigation and the benefits of settlement to both sides.

"[S]ettlements are permissible where, 'notwithstanding the status of discovery, plaintiffs' negotiators had access to a plethora of information regarding the facts of their case.'" *Doe v. Déjà Vu Consulting, Inc*., 925 F.3d 886, 898 (6th Cir. 2019) (quoting *In re Corrugated Container Antitrust Litig*., 643 F.2d 195, 211 (5th Cir. 1981)). "Sufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999).

There had already been a substantial amount of discovery in this case, both formal and informal. Defendant produced daily time cards for Plaintiff and payroll and timekeeping information for the Collective and Class Members, which allowed for a thorough evaluation of their claims and calculation of damages. Moreover, exchange of damages models and extensive discussion between the Parties has allowed them to adequately evaluate the strengths and weaknesses of the case. Collective and Class Counsel is therefore strongly equipped to negotiate a fair settlement and advise the Named Plaintiffs of the advantages and disadvantages of litigating through trial. This factor thus weighs in favor of preliminary approval.

### d. Risks of Establishing Liability and Damages (*Grinnell* Factors 4 and 5)

Continued litigation in this case would pose great risks for plaintiffs. "In complex, multi-year class actions, the risks inherent in the litigation are immense." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *8 (D.S.C. July 23, 2015) (citations omitted); *Brown v. Delhaize Am., LLC*, 2015 U.S. Dist. LEXIS 184265, at *5 (M.D.N.C. July 20, 2015) (noting the "inherent uncertainty of litigation and the challenges of establishing liability in a complex case brought under Rule 23."). Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *In re MI Windows*, 2015 U.S. Dist. LEXIS 184471, at *38 (citations omitted).

A court should consider "the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future,

22

after protracted and expensive litigation. *Id.* (citations omitted); *see also Brunson v. Louisiana-Pac. Corp.*, 818 F. Supp. 2d 922, 926 (D.S.C. 2011) (holding that a court should weigh "the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation"); *Brown*, 2015 U.S. Dist. LEXIS 184265, at *5 (approving of settlement terms that "reflect the inherent uncertainty of litigation"). In order to prevail, Plaintiffs would have to overcome probable attempts to decertify the FLSA collective and Rule 23 certification. Further, a trial on the merits would pose substantial risks for Plaintiffs.

Although the Plaintiffs are confident that they could survive a motion for decertification, and prevail on both liability and damages, the Named Plaintiffs and their counsel are also realistic and recognize the inherent risks. Because of the uncertainties of outcome, lengthy duration and costs in litigation, class actions by their very nature lend themselves to compromise. Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In Re Cardizem*, 218 F.R.D. at 530; *see also Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense"). Here, the proposed Settlement provides substantial financial relief to the Settlement Class, and brings finality to what otherwise would have been a long, protracted litigation.

23

### e. Risks of Maintaining a Class Action (*Grinnell* Factor 6)

Plaintiffs are confident in their ability to maintain certification of the Rule 23 class and FLSA collective. However, Plaintiffs and their counsel recognize that despite substantial briefing and argument, there will still be uncertainty, especially once more extensive discovery begins, as provided above. *See Brown*, 2015 U.S. Dist. LEXIS 184265, at *5. This factor thus weighs in favor of approval.

### f. Ability of Defendant to Withstand Greater Judgment (*Grinnell* Factor 7)

There is no evidence here as to whether or not the Defendant could withstand a greater judgment. However, even if Defendant could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Thus, especially considering the fact that all of the other *Grinnell* Factors weigh in favor of the proposed settlement, even if Defendant could withstand a greater judgment, for which there is little evidence at this stage, this factor should not be an obstacle to preliminary approval.

### g. Range of Reasonableness of the Settlement Fund (*Grinnell* Factors 8 and 9)

Approval of a class action or FLSA collective settlement as reasonable under the relevant circumstances is within the sound discretion of the district court. *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). "[T]here is a strong initial presumption that the compromise is fair and reasonable." *Stone*, 139 F.R.D. at 339. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a

24

particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2; *see also, In re A.H. Robins Co.*, 880 F.2d 709, 748 (4th Cir. 1989); *Flinn*, 528 F.2d at 1173-74.

Here, Net Settlement Amount (i.e. the amount remaining after deduction of the incentive award to Plaintiff Alexis Mintz, Collective and Class Counsel's attorneys' fees and expenses, and the Settlement Administrator's fees and expenses) will be at least $24,623.56, which is roughly equivalent to the overtime wages the twenty-six (26) Collective and Class Members would stand to recover if they were found to have worked 5.5 unpaid minutes per day (or 27.6 unpaid minutes per week) in excess of forty (40) hours per week, calculated at the overtime premium rate of pay of $26.70 per hour. Conlon Decl., ¶ 6. This recovery is fair in light of Plaintiff's estimates of the amount of unpaid pre-and-post-shift work she performed, and when compared with settlements approved in other FLSA call center cases. *See Turner v. Concentrix Servs. US, Inc.*, 2023 U.S. Dist. LEXIS 5117 (W.D. Ark. Jan. 11, 2023) (approving settlement that provided recovery of approximately 35 minutes of off-the-clock work performed per week using the average hourly base rate of pay of all plaintiffs); *Howard v. Web.com Grp. Inc.*, 2020 U.S. Dist.

LEXIS 256933, at *15 (D. Ariz. Sep. 18, 2020) (approving settlement that provided recovery of approximately 15 to 20 minutes of unpaid start-up time for each week worked); *Quintana v. HealthPlanOne LLC*, 2019 U.S. Dist. LEXIS 124017, at *9 (D. Ariz. July 24, 2019) (approving settlement that provided recovery of about 5 minutes of unpaid work per day, or 25 minutes of unpaid time per week).

This strength of this recovery is further supported by the risks and uncertainties of litigation. Defendants have asserted multiple defenses, which included Plaintiff's alleged failure to establish that Defendant knew of or permitted any off the clock work, failing to overcome Defendant's showing that its written timekeeping policies mandated reporting of all time worked, failing to show that Defendant willfully violated the FLSA (thus limiting the recovery to a 2-year period); Defendant establishing that the pre-shift work allegedly performed off the clock is *de minimis* and thus not-compensable; and Defendant establishing that its action were taken in good faith (thus limiting the recovery to actual wage damages). Conlon Decl. ¶¶ 11-12. Furthermore, if Defendant prevailed in either moving to decertify the class or collective, only the Plaintiff's damages would be at issue. Given this risk to Named Plaintiffs and class members, this settlement is beneficial in that it provides a guaranteed monetary recovery for the entire Rule 23 class, and any FLSA opt-ins, that is potentially more generous than if the Parties litigated the case. Thus, the settlement amount provides for a fair recovery.

For all of the foregoing reasons, the Court should grant preliminary approval.

26

**B.      Certification of a Settlement Collective and Class Is Appropriate**

As part of the Settlement, Plaintiff seeks (and, for purposes of settlement only, Defendant does not oppose) certification of the Collective pursuant to 29 U.S.C. § 216(b) and of the Class pursuant to Fed. R. Civ. P. 23.

**1.   Collective Certification**

The FLSA provides that an action for unpaid minimum wages and overtime pay may be maintained against an employer by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The statute goes on to state that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id*. There are accordingly two requirements for maintenance of a representative action under the FLSA: (1) the plaintiffs in the proposed class must be "similarly situated" and (2) they must opt in by filing their consent to sue with the court. *Id*.; *De Luna-Guerrero v. N.C. Growers Ass'n*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004). To be similarly situated to plaintiffs for purposes of § 216(b), persons "'must raise a similar legal issue as to . . . nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical.'" *De Luna-Guerrero*, 338 F. Supp.2d at 654 (quoting The Fair Labor Standards Act § 18.IV.D.3 (Ellen C. Kearns ed.)). In *Jimenez-Orozco v. Baker Roofing Co*., the court certified an FLSA collective for settlement purposes, in conjunction with a Rule 23 class, and found that the putative collective members were similarly situated to the named plaintiffs (Jimenez and

27

Pucheta), because "the other putative class members were field workers on roofing crews employed by Baker during the class period. As such, they were subject to the same travel and record-keeping rules and practices as Jimenez and Pucheta, and accordingly suffered from the same occasional failure to be paid for time loading and riding stipends as Jimenez and Pucheta." 2007 U.S. Dist. LEXIS 93860, *17-21 (E.D.N.C. Dec. 20, 2007).

Here, similarly, the Collective Members and Plaintiff Mintz all worked as hourly-paid, non-exempt employees, who were employed with Defendant and worked in the position of a Member Service Call Center representative during any time from March 8, 2021 to July 30, 2024, and were all allegedly required to engage in work-related activities before clocking in—including starting up computers, logging into applications, and reviewing work-related emails—and after clocking out—including logging off systems, shutting down computers, dropping off mail and deposits, and waiting for an escort out of the facility—without compensation. Accordingly, the Court should find that the Collective Members satisfy 29 U.S.C. § 216(b)'s similarly-situated requirement and certify the Collective for settlement purposes.

### 2. Class Certification

Rule 23(e) provides the mechanism for certifying a class action, including for settlement purposes. *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). The United States Supreme Court in *Amchem* held that a district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but that the other requirements for certification still must be satisfied. *Id.* at 620.

To obtain certification, a class must satisfy the Rule 23(a) requirements. "First, the class must comply with the four prerequisites established in Rule 23(a): (1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation. Second, the class action must fall within one of the three categories enumerated in Rule 23(b)." *Solomon v. Am. Web Loan*, 2020 U.S. Dist. LEXIS 112782, at *6 (E.D. Va. June 26, 2020) (quoting *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 423 (4th Cir. 2003)).

### a. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Though "[n]o specified number is needed to maintain a class action," *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967), "[a]s a general guideline, . . . a class that encompasses fewer than 20 members will likely not be certified . . . while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone," 1 Newberg on Class Actions § 3:12 (5th ed. 2021). "For the 'gray area' cases between twenty and forty members, 'all the circumstances of the case should be taken into consideration' in evaluating the impracticability of joinder." *FWK Holdings, LLC v. Merck & Co. (In re Zetia (Ezetimibe) Antitrust Litig.)*, 7 F.4th 227, 234 (4th Cir. 2021) (quoting *Ballard v. Shield of S.W. Va., Inc.*, 543 F.2d 1075, 1080 (4th Cir. 1976).

Here, there are twenty-two (22) Class Members,[5] Conlon Decl. ¶ 4, which falls in the gray area. District courts typically consider several non-exhaustive factors to assess practicability of joining such a modestly numerous class. They include: (1) judicial economy; (2) the geographic dispersion of putative class members; (3) the putative class members' ability and motivation to litigate without class certification; and (4) the putative class members' financial resources. *Id.* at 234 (quoting *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 253 (3d Cir. 2016)). These factors support a finding of numerosity because the claims at issue involve relatively low individual damage recoveries and because the Class Members are low-wage workers who may lack the resources to litigate as joined Plaintiffs, as evidenced by the fact that no Class Members have opted into this case despite it being pending for over a year.

### b.   Commonality and Typicality

For purposes of the Settlement only, the Parties agree that Plaintiffs' claims are typical of other Settlement Class Members and that common questions of fact and law exist regarding Defendant's alleged failure to abide by wage and hour law, including whether Defendant paid legally required straight time wages and overtime compensation.

### c.   Adequacy

The Court finds the adequacy requirement satisfied when (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation. *Solomon*, 2020 U.S.

---

[5] Four of the twenty-six (26) Collective Members are not also Class Members because their employment ended before the start of the Class Period, which is later than the start of the Collective Period. Conlon Decl. ¶ 4.

Dist. LEXIS 112782, at *8-9 (citing *In re NeuStar*, 2015 U.S. Dist. LEXIS 129463, 2015 WL 5674798, at *4). The Court is determining whether there are any "conflicts of interest between named parties and the class they seek to represent." *Id.*

The adequacy of representation requirement is met here. Plaintiffs have common interests with unnamed members of the Settlement Class in that they all seek unpaid straight time wages and overtime wages from Defendant for alleged pre/post-shift work based on practices that Plaintiffs allege are common to all Settlement Class Members. Plaintiff Alexis Mintz understands and has accepted her obligations under the Settlement Agreement and has adequately represented the interests of the putative Settlement Class.

Class Counsel routinely handles wage and hour class actions and has extensive experience in this area. Class Counsel have superior knowledge of the relevant facts and legal issues and experience in similar cases.

> ### d. Class Certification for Settlement Purposes Is Proper Under Rule 23(b)(3)

Apart from satisfying the four prerequisites of Rule 23(a), class certification requires a showing that certification is proper under one of the three requirements of Rule 23(b). Here, the Parties agree only for purposes of the Settlement that certification of the Settlement Class is appropriate under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### e. Ascertainability

The Settlement Class Members also are ascertainable because they are "readily identifiable" from payroll and employment records.

### C. The Court Should Appoint Brown, LLC and Cox, Stansberry & Kinsley as Collective and Class Counsel

In determining whether to appoint class counsel under Fed. R. Civ. P. 23(g), the Court must consider the following factors: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Brown, LLC and Cox, Stansberry & Kinsley, attorneys for Plaintiff Alexis Mintz in this action, satisfies each of the above factors.

Brown, LLC, as Plaintiff's lead counsel, has represented the Plaintiff from the inception of this litigation and has dedicated over seventy (70) hours into this matter. Brown, LLC performed substantial work identifying, investigating, and settling Plaintiffs' and the Collective and Class Members' claims. Among other tasks, Brown, LLC engaged in extensive informal discovery with defense counsel and reviewed and analyzed their document production. Conlon Decl. ¶¶ 5-9.

Brown, LLC has substantial experience prosecuting and settling employment class actions, and have handled numerous complex and class action cases, and are well-versed in the law governing wage & hour class and collective actions. Conlon Decl. ¶ 14. Cox,

Stansberry & Kinsley also crucially serves as local counsel to Brown, LLC in this matter to provide guidance on the local rules and procedures in this district.

The work that Brown, LLC and Cox, Stansberry & Kinsley have performed thus far in litigating and settling this case demonstrates their commitment to the Collective and Class. If appointed as Collective and Class Counsel, Brown, LLC and Cox, Stansberry & Kinsley will dedicate the necessary additional time and labor to ensure that putative Collective and Class Members will receive their Notice Packets, attend the Final Fairness Hearing, resolve or address any questions from the putative Collective and Class, and draft the final approval motion and motion for attorney's fees and costs. Conlon Decl. ¶ 10.

For the above reasons, the Court should approve this Motion and appoint Brown, LLC and Cox, Stansberry & Kinsley as Collective and Class Counsel.

### D. Class Counsel's Request for Fees and Costs Is Reasonable

Pursuant to Section IV.8 of the Settlement Agreement, Collective and Class Counsel seeks an award of attorneys' fees and costs of up to $20,000.00, the exact amount to be determined at the date at which Class Counsel submits their motion for final approval of the settlement. To date, Class Counsel has incurred over $725 in expenses, and may incur additional costs if required to travel to the Final Approval hearing before this Court. Conlon Decl., ¶¶ 9-10.

Plaintiffs' fee and expense request is reasonable under applicable legal standards, and should be preliminarily approved by the Court. Collective and Class Counsel shall move, along with its motion for final approval of settlement, for approval of their attorney

fees, associated litigation expenses, and class representative participation awards as described herein.

### 1. Plaintiff Counsel's Fees Are Reasonable

The two universally recognized methods for determining reasonable attorneys' fees for class counsel are (1) the lodestar method and (2) the percentage-of-the-fund method. *Deloach v. Philip Morris Companies*, No. 00-1235, 2003 WL 23094907 (M.D.N.C. 2003). The Fourth Circuit has recognized the value of both methods, rather than expressing a preference for one. "The Fourth Circuit has neither announced a preferred method for determining the reasonableness of attorneys' fees in common fund class actions nor identified factors for district courts to apply when using the percentage method." *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 760 (S.D. W. Va. 2009).

Collective and Class Counsel's attorneys' fees request is reasonable under the lodestar method and *Johnson* factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974); *see also McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. Dec. 12, 2013) (recognizing the use of both the lodestar method and *Johnson* factors). Collective and Class Counsel invested substantial time and effort into the litigation, rendered a high quality of services, the Settlement conveys a substantial benefit to Plaintiff and the Collective and Class Members and addresses an alleged illegal payroll practice, the litigation was complex and risky, and Collective and Class Counsel undertook this work on a wholly contingent basis, bearing all of the out-of-pocket expenses. Conlon Decl. ¶ 9. Furthermore, the amount requested is well within the range of fees customarily sought by

(and awarded to) experienced counsel, like those herein, in similar complex, contingency-fee litigation.

Attorneys providing enforcement services of substantive provisions of law (such as wage protections) must be afforded incentives comparable to those negotiated in private bargaining that takes place in the legal marketplace. *See Deposit Guar. Nat 'l Bank of Jackson, Miss. v. Roper*, 445 U.S. 326, 338 & n. 9 (1980). It has therefore been urged that in defining a "reasonable fee" in representative actions, the law should mimic the market." *See, e.g., Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("When a fee is set by a court rather than by contract, the object is to set it at a level that will approximate what the market would set. The judge, in other words, is trying to mimic the market in legal services.")

As will be demonstrated in depth in Collective and Class Counsel's motion for attorneys' fees, applying either the percentage-of-the-fund or the lodestar methodology (or a combination of the two) would result in a finding of reasonableness of the requested attorneys' fee.

## 2. Lodestar Method

In *Hensley v. Eckerhart*, the Supreme Court established a two-step process for calculating attorney fees, also known as the "lodestar method." 461 U.S. 424 (1983). The Court has established a "strong presumption" that the lodestar method – "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" – represents the "reasonable fee" to which a prevailing party is entitled. *Perdue v. Kenney A.*, 559 U.S. 542, 553-4 (Aug. 21, 2010). As noted by the *Perdue* court, the lodestar method

35

results in an award that roughly approximates the fees that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour. *Id.* at 551. The lodestar's fee components, hours and rates, are fact determinations that an appellate court would review only for clear error. *Simi Investment Co., Inc. v. Harris County*, 236 F.3d 240, 255 (5th Cir. 2000). "Where a plaintiff has obtained excellent results, this attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435 .

Here, Collective and Class Counsel has thus far expended over seventy (70) hours to date prosecuting the litigation and bringing the litigation to an early resolution with significant benefits to Plaintiff and the Class Members, resulting in a lodestar that supports the proposed $20,000 in attorneys' fees and costs. Conlon Decl. ¶ 9. Plaintiffs will include further information about their time expended and rates in their Motion for Final Approval of this Settlement and Approval of Attorneys' Fees, Litigation and Administrative Costs, and Incentive Award.

### 3. The *Johnson* Factors

Under the lodestar method, a prevailing party may only recover a fee award that is reasonable. *Perdue*, 559 U.S. at 553-4. The time claimed must be reasonable in order for it to be compensable. *Fredrich v. Thompson*, 1999 U.S. Dist. LEXIS 21303 (M.D. N.C. Nov. 26, 1999); *League of United Latin Am. Citizens #4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). In *Perdue*, the Supreme Court contrasted the lodestar

method with the "method set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5ᵗʰ Cir. 1974), which listed 12 factors that a court should consider in determining a reasonable fee." *Id*. at 550-51[6]. While the reasoning in *Perdue* indicates a strong overall preference for the lodestar method over the Fifth Circuit Court of Appeal's *Johnson* factors, the Fourth Circuit has treated the *Johnson* factors as a complement to the lodestar method. *See, e.g., McAfee*, 738 F.3d at 88.

Collective and Class Counsel will provide further support in their Motion for Final Approval of this Settlement and Approval of Attorneys' Fees, Litigation and Administrative Costs, and Incentive Award, but a review of these factors will support the reasonableness of the fees requested; Collective and Class Counsel expended substantial time and effort in this case, are highly experienced in class action and overtime litigation, handled this case on a contingent fee basis with inherent risks, and have managed this litigation with efficiency and expertise, which is reflected in the excellent result obtained in the Settlement.

### 4. Percentage of the Fund Method

Collective and Class Counsel's requested fee is less than 40% of the gross fund, which is consistent with Collective and Class Counsel's retainer agreements with Plaintiff

---

[6] The *Johnson* factors: (1) [T]he time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards of similar cases. *Johnson*, 488 F.2d at 717-19.

(which provides for a 40% contingency-fee) and with fees awarded in other class action settlements. *See Faile v. Lancaster Cty.*, 2012 U.S. Dist. LEXIS 189610, at *28-29 (D.S.C. Mar. 8, 2012) (citing *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663, 2011 WL 1344745 (D.N.J. Apr. 8, 2011)) ("the court cited to cases from district courts throughout the country in common fund cases where attorney's fee awards 'generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund.'"); *Toney, supra Note 3*, Document 73 Filed 07/25/22, ¶ 7 (approving attorneys' fees is collective/class wage-and-hour settlement amounting to $97,600, or 40% of the settlement fund); *Howes v. Atkins*, 668 F. Supp. 1021, (E.D.Ky. 1987) (awarding 50% of $1,000,000 common fund, including expenses); *In re Ampicillin Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1984) (awarding 45% of $7,300,000 common fund plus costs); *Beaulieu V. Eq Industrial Services, Inc., at al*, No: 5:06-CV-00400-BR (E.D.N.C. Oct. 9, 2009) (awarding 38% of the $7,850,000.00 common fund plus costs).

Collective and Class Counsel will provide further analysis and documentation in support of the reasonableness of their requested fees in their Motion for Final Approval of this Settlement and Approval of Attorneys' Fees, Litigation and Administrative Costs, and Incentive Award.

### E.    Costs and Expenses are Reasonable

Collective and Class Counsel are seeking reimbursement of litigation expenses and settlement administration expenses, based on the amount of such costs incurred or anticipated at the time Plaintiffs file the Motion for Final Approval of this Settlement and

38

Approval of Attorneys' Fees, Litigation and Administrative Costs, and Incentive Award. To date, Class Counsel has incurred over $725 in expenses, and may incur additional costs if required to travel to the Final Approval hearing before this Court. Conlon Decl., ¶¶ 9-10.

### F. The Proposed Notice Provides Adequate Notice to Settlement Class Members

#### 1. The Notice Satisfies Due Process

Due process requires the class notice to be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. GMC*, 497 F.3d 615, 628 (6th Cir. 2007). Due process, however, "does not require the notice to set forth every ground on which class members might object to the settlement." *Id.* (internal quotation marks and citation omitted). Rather, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* (alteration in original, internal quotation marks and citation omitted).

The Parties propose that the Settlement Administrator send the Notice of Settlement, Employee Information Sheet, and Election Not to Participate in Settlement form to each Class Member by mail. *See* Settlement Agmt., § IV.5. The Settlement Administrator will endeavor to ensure that each Class Member receives his or her Hybrid Notice Packet by taking all reasonable steps to trace the addresses of Settlement Class Members. Upon return of any Hybrid Notice Packet, the Settlement Administrator will promptly search for

the Class Member's address and, if found, will re-mail the Hybrid Notice Packet to the Class Member. *See id.*, § IV.5. Furthermore, Class Members may contact the Settlement Administrator to obtain replacement copies of the Notice of Settlement, Employee Information Sheet, and Election Not to Participate in Settlement form.

Class Members will have twenty-one (21) days before the date of the Final Fairness Hearing or, if no specific date for the Final Fairness Hearing has then been set, sixty (60) days from the date of mailing of the Hybrid Notice Packets to review, opt-out of, or object to the Settlement. Class Counsel's information is provided in the Hybrid Notice Packet so Class Members can ask any questions relating to the Settlement.

This notice plan is consistent with class certification notices approved by numerous courts, and is, under the circumstances of this case, the best notice practicable. *See, e.g.*, *Wright v. Linkus Enters., Inc.*, No. 2:07-cv-01347-MCE, 2009 WL 2365436, at *7-8 (E.D. Cal. July 29, 2009) (holding notice involving similar mail procedures met both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'") (quoting Fed. R. Civ. P. 23(c)(2)(B), (e)); *Davis v. Abercrombie & Fitch Co.*, No. 08-CV-01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009) (approving similar method of issuing class notice); *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009) (finding similar method to be "best notice practicable"); *Adams v. Inter-Con Security Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3-4 (N.D. Cal. Oct.

40

30, 2007) (notice using similar method "satisfies the notice requirements of Rule 23(e), and . . . all other legal and due process requirements").

### 2. The Notice Is Accurate, Informative and Easy to Understand

Under Rule 23(e), class members are entitled to notice of any proposed settlement before it ultimately is approved by the court. Adequate notice must be given to all absent Class Members and potential Class Members to enable them to make an intelligent choice as to whether to opt-out of the Settlement. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 326-27 (3d Cir. 1998). Under Rule 23(e), the "court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." Fed. R. Civ. P. 23(e)(1). The Notice must also comply with Rule 23(c)(2)(B).

The Notices here will fairly inform Class Members of the terms of the Settlement and their related options and satisfies due process requirements and Fed. R. Civ. P. 23(e). *See Grice v. PNC Mortgage Corp. of America*, No. CIV. A. PJM-97-3084, 1998 WL 350581, at *7 (D. Md. May 21, 1998). The Notice of Proposed Collective and Class Action Settlement and Final Approval Hearing (Ex. B to the Settlement Agreement), is written in plain language and provides clear and accurate information as to the nature and principal terms of the Settlement Agreement, including the monetary and other relief the Settlement will provide Class Members; an explanation of the method of allocating Settlement Amount monies to Class Members; the scope of releases; the Settlement Administrator's estimated expenses; the procedures and deadlines for opting out and submitting objections; the consequences of taking or foregoing the various options

41

available to Class Members; and the date, time and place of the Final Approval hearing. *See Manual Fourth* § 21.312; *Grice v. PNC Mortgage Corp. of America*, 1998 WL 350581, at *7 ((The notice should "employ plain language").

Additionally, the Notices of Settlement clearly delineate the FLSA claims from the North Carolina law claims, and provide separate instructions to putative Collective Members to submit timely and valid Consent to Join forms to opt into the FLSA Collective. Parties' Counsel have also created two different Notice Packets (the "Hybrid Notice Packet" and "Collective Notice Packet") as to tailor the information and instructions provided to the putative Collective and Class Members.

Further, pursuant to Rule 23(h), the Notice of Settlement also sets forth the maximum amount of attorneys' fees and costs that may be sought by Class Counsel. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See, e.g.*, 4 NEWBERG ON CLASS ACTIONS (Fourth) §§ 8.21, 8.39; *Manual Fourth* §§ 21.311-21.312.

### G.  The Court Should Set a Final Fairness Hearing

The Court should schedule a final fairness hearing approximately 100 days after the date of preliminary approval of the settlement to determine that final approval of the settlement is proper. The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including the fairness, adequacy and reasonableness of the Settlement, including the attorneys' fees, reimbursement of costs, and Class Representative and Incentive Award.

42

## VI.    CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court: (1) preliminarily approve the Settlement and conditionally certify the Settlement Collective and Settlement Class for settlement purposes only; (2) approve their proposed Hybrid Notice Packet to be disseminated to all persons who qualify as both Collective Members and Class Members pursuant to the Settlement Agreement; (3) approve their proposed Collective Notice Packet to be disseminated to all persons who only qualify as Collective Members but not Class Members pursuant to the Settlement Agreement; (4) appoint Brown, LLC and Cox, Stansberry & Kinsley as Collective and Class Counsel; (5) appoint Apex Class Action as the Settlement Administrator; and (6) schedule a fairness hearing to consider final approval of the proposed Settlement, and approval of requested attorneys' fees, costs, and Incentive Award.

## **WORD COUNT CERTIFICATE**

The undersigned parties hereby certify, pursuant to Local Rule 7.3(d), that the foregoing Brief consists of 11,716 words, including the body of the brief, headings and footnotes. Plaintiff has filed a separate Unopposed Motion for Leave to File Excess Pages.

Dated: February 18, 2025

Respectfully submitted,

s/ *Nicholas Conlon*
Nicholas Conlon
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5297
nicholasconlon@jtblawgroup.com

*Lead Counsel for Plaintiff*

Brian L. Kinsley
COX, STANSBERRY & KINSLEY
2024 Main Street, SW Suite B
Cullman, Alabama 35056
Phone: 205-870-1205
Fax: 205-870-1252
blkinsley@cskattorneys.com

*Local Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing document on ECF, causing electronic notification of same to all counsel of record.

Dated: February 18, 2025

s/ *Nicholas Conlon*
Nicholas Conlon

44